RAMÓN MONTANER, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent, and CÁNDIDA FUENTES WIDOW OF CORTÉS, WILLIAM CORTÉS FUENTES and ELOÍSA CORTÉS SOTO, Petitioners before the Commission.

No. 217. Argued March 10, 1941.—Decided March 18, 1941.

*George A. Malcolm, Attorney General, E. de Aldrey, Assistant Attorney General,* and *Víctor J. Vidal,* the latter, counsel for the State Insurance Fund, for petitioner; *Ramón A. Gadea Picó,* for petitioners before the Industrial Commission.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

On January 15, 1937, the workman Domingo Cortés suffered an accident in his work as a consequence of which he

died on the 31st of the same month. After the necessary legal proceedings, the Manager of the State Insurance Fund, on September 29, 1937, adjudged Gregorio Cortés the only beneficiary who was partially dependent upon his son, the deceased workman, and adjudicated to him a compensation amounting to $1,395.87 to be paid $12 monthly, effective retroactively to the month following that on which the workman died. Besides his father, a full sister of the workman, Eloísa Cortés Soto, a half brother, William Cortés Colón and his step mother, who was also his foster mother, Cándida Colón Fuentes, who lived with and had cared for the workman since he was 10 years old, were also dependent upon him. Gregorio Cortés was an old man and suffered from the hæmoptysical hemorrhages which did not let him work; his son, William Cortés Colón, on the date on which the workman died, was not as yet 15 years old and Eloísa, it is alleged, has always been mentally deranged and therefore, Gregorio, as well as his family, were supported by the salary of the workman, aided by fifty or seventy-five cents a week which Gregorio received from his other children.

Gregorio Cortés continued receiving the monthly compensation of twelve dollars until his death, which took place on December 28, 1939. The rest of the compensation remained unpaid because it had not fallen due as yet. Said remnant amounted to a sum of approximately $800 and there was a debt of $86.62 for medicines and food.

On January 18, 1940, in view of the death of Gregorio Cortés, his widow and his two aforementioned children requested the Manager of the State Insurance Fund to transfer the compensation which Gregorio Cortés had been receiving to the widow, for the benefit of all the petitioners, until the rest of said compensation was used up. This petition was denied by the Manager in a letter of February 1, 1940, and ratified by a decision of the 8th of said month wherein he states the reasons for which, in his opinion, he cannot accede to the request and wherein at the same time he orders the

suspension of the monthly payments and the return of the balance of the compensation to the State Insurance Fund.

The petitioners appealed to the Industrial Commission wherein by a majority vote, the decision of the Manager was reversed and it was ordered: (1) that the debt of $86.62 to which reference has ben made, be paid by the State Insurance Fund and charged to the remainder of the compensation awarded to Gregorio Cortés which remained unpaid due to his death; (2) that the rest of said compensation be paid in equal portions to Cándida Cortés Fuentes, widow of the beneficiary and foster mother of the workman and to his brothers, William Cortés Colón and Eloísa Cortés Soto, whom the Commission adjudged beneficiaries and heirs of Gregorio Cortés, and that it should be previously proven that Eloísa Cortés was mentally incapacitated, and limited the right of William Cortés to the amount that corresponds to him until he becomes 15 years of age, the part remaining from his compensation, if any there be, to increase the compensation of his mother Cándida Colón Fuentes and the same to be done with the portion belonging to Eloísa Colón, if it is not shown that she is mentally incapacitated.

The Manager of the State Insurance Fund requested a reconsideration and it being denied, he filed this petition for review.

■■ The question to be decided in this appeal is whether once the beneficiary of a workman dies, the part of the compensation which has not been collected by him because it was not due on the date of his death, passes to the dependent heirs of the beneficiary who were also heirs of the workman, or if said uncollected portion reverts to the State Insurance Fund.

The legal provision applicable to the question in controversy is that part of Par. 5 of Section 3 of the Workmen's Compensation Act (Laws of 1935, p. 264), which reads thus:

"Should the workman or employee leave a widow, parents, legitimate or illegitimate children, posthumous children, whether or not

natural or adoptive children, or grandchildren, any of whom were wholly or partly dependent for their support on the earnings of the deceased workman or employee at the time of his death, they shall receive a compensation of from one thousand (1,000) to three thousand (3,000) dollars, which shall be graduated according to the earning capacity of the deceased workman or employee and to his probabilities of life, in accordance with such rules as the Manager of the State Fund shall prepare, which rules shall have the force of law after they are approved by the Industrial Commission and by the Governor, and promulgated in accordance with law. Said compensation shall be distributed among the aforesaid relatives according to the condition, needs and degree of relationship and dependence of each, as the Manager may decide in accordance with the facts.

"In default of the aforesaid persons, the foster father or mother, the foster children, or brothers and sisters under fifteen years of age, or those, whatever their age, judicially declared incapacitated by the proper court, who were wholly or partly dependent on the earnings of the deceased workman or employee shall receive a compensation of from one thousand (1,000) to two thousand (2,000) dollars as a maximum. Should the persons entitled to this compensation be several, it shall be distributed among them as the Manager may direct.

"The compensation awarded to beneficiaries entitled to receive it shall be paid in monthly installments; and in cases where the Manager so decides, the compensation shall be paid in full in one sole payment, subject to the approval of the Industrial Commission by the unanimous vote of its members, provided it is proved from the facts investigated by the Manager or the Industrial Commission that there is no danger in making such payment and that the disbursement will be advantageous to the beneficiaries and to the purposes pursued by this Act. In such cases the Manager and the Industrial Commission shall state in their resolutions the result of the facts investigated and their reasons for granting full payment at one sole time.

"Upon the remarriage of the widow or widower, the part payments awarded for his or her benefit shall cease. They shall likewise cease on the death of any other beneficiary to whom such part payments are being made, and in the case of minors, such payments shall also cease when such minors reach the age of eighteen (18) years, unless they are disabled for work."

From the above transcribed legal provision it appears that the law creates two groups of persons with a right to

receive compensation for the death of a workman, providing that those in the first group exclude those of the second group, that is to say, that only when there are none of the first group, will compensation be received by those of the second group. It also provides that the compensation corresponding to those of the first group will fluctuate between the amounts of $1,000 and $3,000, while those in the second group shall receive not less than $1,000 nor more than $2,000.

The first group includes: the widow, parents, children, legitimate or illegitimate, or posthumous children, whether they be natural or adopted, or grandchildren who are dependent totally or partially for their subsistence on the income of the workman or employee at the time of his death.

In the second group are found the foster father or foster mother, and brothers who are not 15 years old or *whatever their age if they have been judicially declared incapacitated* and are dependent, the same as those in the first group, upon the deceased workman.

In this case, when the workman died, his father, Gregorio Cortés, was alive and as the latter was included in the first group, he excluded the foster mother and the brothers of the workman, who are included by the Act, as we have seen, in the second group. Gregorio Cortés having died, shall those of the second group—the petitioners herein—continue to receive that part of the compensation which has not been extinguished, or must it, as the Manager claims, revert to the State Insurance Fund? Both the Manager and the minority of the Industrial Commission seem to have been misled by that part of the Act which says as follows:

"Upon the remarriage of the widow or widower, the part payments awarded for his or her benefit *shall cease*. They shall likewise cease on the death of any other beneficiary to whom such part payments are being made, and in the case of minors, such payments shall also cease when such minors reach the age of eighteen (18) years, unless they are disabled for work."

274

From this legal provision the Manager and the minority of the Industrial Commission infer that when Gregorio Cortés died, the payments which were uncollected because they had not fallen due on the date of his death, revert to the State Insurance Fund.

We grant that in regard to this matter, the statute is not as clear as it should be; but if, for its interpretation, we bear in mind the idea which is behind this social legislation, we will easily understand that such was not and could never have been the intention of the legislator. As it has repeatedly been said, the compensation paid to the workman or his beneficiaries is not charity; it is a right acknowledge to them by law when in the course of his employment and as a consequence of the same the workman suffers injuries or incapacities or loses his life through accidents which arise from any act or function inherent to his employment. The act takes its inspiration not only from that act of justice to the workman and to those dependent upon him, but also on the purpose of preventing that on the death of the workman, these may find themselves without the necessary support, thus becoming a burden on the State. Although in Puerto Rico the compensation is paid through the State Insurance Fund, it is derived from the premium contributed to said fund by the employers who in turn are benefited by the work of the laborer.

■ As the Workmen's Compensation Act is a law of dependents and not of heirs, as has been repeatedly decided, it is clear that when a compensation is granted to be liquidated by partial payments, the installments which remain unpaid because they are not yet due when the beneficiary dies—since the right to collect them is not a vested right— are not transferred to the heirs of the beneficiary or to those of the workman. *Quiñones* v. *South P. R. Sugar Co. of P. R.,* 48 P.R.R. 341; *American Rolling Mill Co.* v. *Earnhart* (Ohio App.), 186 N.W. 883 (Dec. 1932); *Barwin* v. *Inde-*

*pendent School District,* (S.D.) 248 N.W. 257 (May 1933);
2 Schneider Workmen's Compensation Law, 2nd ed., 1292–1293.

In the present case, the petitioners, as heirs and dependents of Gregorio Cortés, have no right to what they request. But they were at the same time dependent on the workman at the time of his demise, included in the second group with a right to compensation. Upon this point, it is correctly stated in the order appealed from:

"Then, according to the truth of the facts, upon Domingo's work not only his father Gregorio, but also his two brothers aforesaid and the former's wife, Cándida Colón de Cortés, were dependent for their support. That is the truth if we are to apprise the facts as they happen in daily life; if Gregorio Cortés was unable to work and his two children, William and Eloísa, and his wife, lived together with him and Domingo with them, and the latter delivered to his father the income from his work, there is no doubt that upon said income lived his brothers and step mother; besides the legal and moral duty that Domingo had to support them because the father was unable to work due to his poor health."

Once we know the purpose of the law, can it be rationally held that it contemplates a situation as the one of the case at bar, where, although there are $800 pertaining to the compensation granted by reason of the workman's death, his stepmother and brothers—one a minor 15 years old and the other one insane—all of whom were dependent upon said workman for their support, should remain in dire poverty, while said sum would go to engross the State Insurance Fund? Undoubtedly not. It is argued by the petitioner and by the minority of the Industrial Commission that there is no legal provision to authorize the payment requested by the petitioners. But the truth is that neither is there any legal provision that forbids it and on the contrary, construing the law with the intent to carry out the high ideals which inspires it, it will be easily seen that the conclusion at which the majority of the Industrial Commission arrived must prevail.

Similar provisions of the Massachusetts statute have been interpreted in like manner. In *In re Bartoni* (Mass.) 114 N.E. 663 (Dec. 1916), the deceased workman was survived by his widow and five children, four of which were over twenty-one and the other one was fourteen years old. The minor child was included, as in the present case the foster mother and brothers of the workman, within the definition of dependents contained in subdivision 5 of Section 2 of the Act of that State, because they were next of kin as well as presumptive heirs. Ascording to Par. 2 of Section 7 (*c*) of that statute, it would have been conclusively presumed that the minor was totally dependent on his father, except that because his mother was alive, he was excluded because it was conclusively presumed that it was she who depended upon her husband. The workman's widow having died before she collected all the weekly installments which had been granted her—because these were not due at the time of her death—the minor requested to be substituted in the right to receive the compensation which was still to be paid, and the court decided, citing *In re Murphy,* 224 Mass. 592, 113 N.E. 283, that the right to receive the weekly installments which were unpaid did not constitute a vested right in favor of the widow and that this right only existed during her lifetime, terminating upon her death; that her executor could only receive the weekly installments which had been unpaid from the day of the accident up to the date of her demise, but notwithstanding this, on adjudging the rights of the minor as a son of the workman, the court said, with reference to Par. 3 of Section 12 of the Act:

"Moreover, this section is broad in its scope. It should be given a construction commensurate with its obvious purpose. *It would be 'subject to the provisions of' the Workmen's Compensation Act to order the payment of weekly compensation to be made to a minor child of the deceased employé actually dependent upon his father for support at the time of the latter's decease, after the decease of his widowed mother.*"

The order of the Industrial Accident Board was reversed and the case remanded for further proceedings. The legal provision which served as a basis to the Supreme Court of Massachusetts for its decision, says as follows:

"Any weekly payment under this act may be reviewed by the . . . Board, and on such review the Board may, in accordance with the evidence and subject to the provisions of this act, issue any order which it deems advisable."

We admit that in our Workmen's Compensation Act there is no provision similar to that above copied. But the run of our decisions has arrived at the same conclusion, in accordance with the holdings of the Continental Courts, that the right to collect installments not yet due, does not constitute a vested right. Since this is so, it is evident that the Manager or the Industrial Commission, as the case may be, interpreting the law in harmony with its evident purpose, may find out how many installments are not due and render the same order that was issued by the Supreme Court of Massachusetts under the legal provision aforesaid.

See, by way of illustration, the cases of *Ex parte Todd Shipbuilding & Dry Docks Co.,* (Ala.) 103 So. 447; *California Casualty Indemnity Exchange* v. *Industrial Accident Commission et al.,* (Cal.) 295 Pac. 34; *McCarl* v. *Borough of Houston* (Pa.), 106 Atl. 104.

It seems proper that we make a digression, transcribing here a paragraph of the order of the Industrial Commission of Puerto Rico which should serve as a guide to be followed by the Manager of the State Insurance Fund in establishing in the future the partial payments of a compensation. It says as follows:

"Gregorio was a sick man. He suffered from hæmoptysis. This was known to the Manager of the State Insurance Fund, as appears from the investigation which he made when the latter's son, Domingo, died. Notwithstanding this, he set the payment of his compensation at $12 a month and he insists on this amount although

Gregorio had requested in writing on June 20, 1939, that it be augmented to $30. It is obvious that a seriously sick man, as was Gregorio, had to incur in extraordinary expenses for medicines and food and it was just that he be in a position to afford them during the last days of his life when the demands were more urgent due to his serious illness and counting on the $800 or $900 that he still had to collect from the compensation that had been awarded him.''

When the law provides that compensation be paid in partial monthly installments it has the laudable aim in view of protecting the beneficiary by not letting him waste it; but such a just and reasonable rule cannot be applied in such a manner as to make the compensation useless by dividing it in monthly payments so small that they do not cover the most urgent necessities of the beneficiary, thereby condémning him to hunger and misery, notwithstanding the fact that he has an amount of money in the State Insurance Fund. Not only in the present case, which due to the attendant circumstances is an unusual one, but in any other case wherein one or more persons are dependent upon the beneficiary for their maintenance, a monthly amount of $12 is clearly unreasonable.

In the argument of the case, the attorney of the petitioner emphasized the fact—as though it created an impediment for the granting of the petition—that the beneficiaries included in the second group receive a compensation smaller, as we have seen, than that awarded to those in the first group. Aside from the fact that this circumstance would not be an obstacle, since the amount of the compensation could be reduced within the limits determined by the act provided that in no case the amount to be awarded to the new beneficiaries less (sic) the amount already received by the previous beneficiaries, exceed the maximum established for the first group nor exceed either the amount of the compensation as yet unpaid and in the hands of the State Insurance Fund— in the present case, the amount of $1,395.87 awarded to Gregorio Cortés, does not reach $2,000, which is the maximum

that may be awarded to beneficiaries of the second group. Therefore, it is not necessary to change the amount of the compensation.

Due to the manner in which the decision appealed from is drawn up, we are not able to determine whether it provides that the rest of the compensation in the hands of the State Insurance Fund should be paid in the stated proportion all at once. If this were so, that is, if the purpose of the decision was that the total amount remaining in the hands of the State Insurance Fund should be paid all at once, then said decision shall be understood to be modified in the sense that it should be paid in partial reasonable monthly payments, unless the Manager decides to the contrary, subject, of course, to the approval of the Industrial Commission, by a unanimous vote of its members, as it is provided by Par. 5, Section 3 of the Workmen's Compensation Act.

With the previous explanation, the decision appealed from, rendered by the Industrial Commission of Puerto Rico on December 20, 1940, is affirmed.